## CATE *v.* CATE.

Where a party justifies the taking of another's property under legal authority, or process, he must show that he has acted strictly in conformity with the requirements of law, otherwise he will be considered a trespasser.

He who aids, abets or assists in a trespass, becomes thereby a principal in the trespass.

To maintain trespass it will not be necessary for the plaintiff to prove that the act was done with any wrongful intent; it being sufficient, if it were injurious and without a justifiable cause or purpose, though it were done accidentally, or by mistake.

A party impounding cattle, before he can sell the same at auction must protect himself by a legal warrant of sale, and the magistrate must have jurisdiction and authority to issue the same.

To give such jurisdiction to the magistrate, the party responding is bound to show that the prior proceedings of himself and pound-keeper have been regular, and in conformity with the law.

The plaintiff can maintain trespass if the pound-keeper permitted the cattle impounded to be driven from the pound, for pasturing, to a neighboring town, or if there be shown any unreasonable delay on the part of the party impounding in complying with the requisitions of the statute.

TRESPASS, for taking, &c., the plaintiff's two oxen. The taking was proved. The defendant then proved that on the 7th day of

June, 1860, he took the oxen damage feasant in his inclosure in Allenstown, and impounded them in the common pound of that town, and after certain proceedings sold them at public auction. At this sale the defendant acted as auctioneer.

Certified copies of the proceedings in relation to the impounding and the sale, were referred to as showing those proceedings, and as part of the case. The estimate of damages, &c., was seasonably left with the pound-keeper, and the notice to the plaintiff was seasonably given. The plaintiff appeared before the appraisers, when they appraised the damages, and it did not appear that he objected to the proceedings. The defendant then admitted that after the oxen had been impounded a day or two it was the practice of the pound-keeper to drive the oxen in the morning from the pound to his barn, which was half a mile distant, and there keep them till night, feeding and watering them at the barn, and at night returning them to the pound ; that on the 14th of June the pound-keeper drove the oxen to the pasture of one Sawyer, in Pembroke, two and one half miles from the pound, where they remained ten days ; that then they were returned by the pound-keeper to the pound, and kept at the pound and barn, as before ; that they were driven from the barn to the pound on the day of the sale. But it did not appear that the defendant had any knowledge whatever that the oxen had been out of the pound at any time after they were delivered by him to the pound-keeper, June 7, 1860, before the sale was made. There was evidence tending to show that the pound was exposed to the sun and heat, and that the flies were very troublesome there while the oxen were impounded.

Thereupon the plaintiff asked the court to rule that the foregoing facts showed no defense to this action, and the court so ruled, to which the defendant excepted. The defendant then introduced a witness, Stokes, who testified that the plaintiff desired him (Stokes) to attend the auction, and bid off the oxen for him (the plaintiff); that he (Stokes) did not say he would or would not; that he (Stokes) attended and bid off the oxen for himself for $66, and on his return offered them to the plaintiff for $75, and the plaintiff declined to take them. The defendant claimed that this evidence was competent to be submitted to the jury to show a waiver by the plaintiff of any irregularity in keeping the oxen after the impounding, but the court ruled that it was incompetent for this purpose, and the defendant excepted.

A verdict was thereupon taken for the plaintiff, by consent, judgment to be rendered thereon, or the same to be set aside and a new trial granted, as the opinion of the court should be upon the foregoing case.

*Morrison, Stanley & Clark,* for the defendant, quoted and commented on the case, *Bills* v. *Kinson,* 21 N. H. 448 ; Comp. Stat. 305, sec. 18 ; to show that the party impounding should not be held responsible for the misconduct of the pound-keeper, quoted *Pickard* v. *Howe,* 12 Met. 198 ; *Brightman* v. *Grennell,* 9 Pick. 14 ; *Coffin* v. *Vincent,* 12 Cush. 98 ; *Byron* v. *Crippen,* 4 Gray 312 ; also,

to illustrate the point that the defendant could not be treated as a trespasser *ab initio*, &c., referred to *Taylor* v. *Jones*, 42 N. H. 341, and cases cited; *Ferren* v. *Symonds*, 11 N. H. 363; *Buck* v. *Blanchard*, 20 N. H. 322; *Paul* v. *Sloan*, 22 Vt. 231.

*W. C. & S. G. Clarke*, for the plaintiff, relied on the case *Bills* v. *Kinson*, 21 N. H. 448. They argued that the warrant issued was illegal; that the cattle when sold were then out of the defendant's custody, or the custody of the law, and that the defendant had adopted the wrongful acts of the pound-keeper, and was not ignorant of them. *Smith* v. *Gale*, 21 Pick. 55.

NESMITH, J. This was trespass, for taking and converting the plaintiff's oxen, on the 7th day of June, 1860. The defendant filed for his plea the general issue, with a brief statement, under which he justified, alleging, among other things, that he found said oxen in his inclosure in Allenstown, *damage feasant*; that he drove them to the common pound in Allenstown, and placed them in the custody of the pound-keeper, and that he then gave due notice of his proceedings, as well to the pound-keeper as to the plaintiff, as the owner of the oxen; that the plaintiff, neglecting, for the space of four days, to pay the damages and costs, said oxen still remaining in the pound, the defendant thereupon made an application in writing to Moses Martin, Esq., a justice of the peace for the county of Merrimack, on the 14th day of said June, for the appointment of appraisers, to assess the damage done by said oxen, and for an examination and sale of said oxen, agreeably to the provisions of the statute in such cases made and provided.

The brief statement recites the acts and proceedings of the appraisers, and all things done by the plaintiff prior to, at, and subsequent to the sale at auction, of the oxen, and the acts of the plaintiff, under his warrant of sale, &c.

But the case finds that after the pound-keeper had received said oxen into the pound, he took them therefrom and drove them to his own barn, and then to a distant pasture in the neighboring town of Pembroke, where they were kept for the space of ten days together.

It is a well settled principle of law that a party who justifies the taking of another's property under legal authority, or process, must show that he has acted strictly in conformity with the requirements of law; otherwise he will be considered a trespasser, and liable to the action of trespass as at common law. *Coffin* v. *Field*, 7 Cush. 358; *Morse* v. *Reed*, 28 Me. 481; *Smith* v. *Gates*, 21 Pick. 55; *Fitzpatrick* v. *Stout*, 16 Penn. 22; *Gordon* v. *Clifford*, 28 N. H. 412; *Osgood* v. *Green*, 33 N. H. 182.

Assuming, then, that the defendant did all things rightly up to the time when he delivered the plaintiff's oxen into the custody of the pound-keeper, the law will of course shield him so far. We then find the pound-keeper in fault.

In *Bills* v. *Kinson*, 21 N. H. 451, it is settled "that where a pound-keeper, by his own consent, has permitted the beasts impounded to be driven from the pound to pasture, or other distant

inclosure, he thereby loses his legal control over them, and becomes a wrong-doer, and liable to the original owner for their value. The pound-keeper, under the authority of this decision, having abused the trust the law imposed upon him, and violated the express provisions of the statute made for his guidance, has thereby forfeited the protection of the law, and made himself accountable in damages as a trespasser, to the full extent of the value of the oxen.

The law presumes the pound-keeper to keep and feed the animals entrusted to him at the pound, and not elsewhere, and allows him a reward for such service. The misconduct of the pound-keeper has legally placed the oxen in the hands of the plaintiff, and all the proceedings of the defendant, subsequent to the illegal acts of the pound-keeper, confer no jurisdiction over the animals, and they all fall to the ground as void, and make him a joint participator in such wrongful acts of the pound-keeper. In law, the defendant may be considered as having in this instance aided and abetted in the commission of the wrong inflicted upon the plaintiff; as being accessory thereto; as having wrongfully intermeddled with the plaintiff's property, and to be held personally responsible for the injury. He who aids, abets or assists in a trespass, becomes a principal in the trespass. 1 Ch. Pl. 172. The judgment or decree of forfeiture by a justice of the peace, under the act of 1834, regulating proceedings of pound-keepers, appraisal of damages, sales, &c., should show that the prior proceedings had been such as to give the justice jurisdiction. *Merrill* v. *Gatchell*, 5 Shep. 191. Manifestly, after the wrong done by the pound-keeper here, the defendant could neither apply for, or the justice of the peace grant a legal warrant for the defendant, so as to clothe him with the power of selling or disposing of the oxen of the plaintiff. Nor does the liability of the defendant here depend upon the knowledge he may have had of the misconduct and the laches of which the pound-keeper had been previously guilty. The law inquires merely whether the act done and complained of be injurious to another. In civil trespasses, the law considers the damage actually inflicted upon the party wronged rather than the intent or malice of him who is the wrong-doer, though the *quo animo* is sometimes shown, as material in aggravation of damages. Broom Leg. Max. 221; *Sanderson* v. *Baker*, 2 Wm. Black. 834. To maintain this action it will not be necessary for the plaintiff to prove that the act was done with any wrongful intent, it being sufficient, if it was without a justifiable cause or purpose, though it were done accidentally, or by mistake. 2 Greenl. Ev., sec. 622. It is difficult to comprehend how the defendant, subjected as he was to the necessity of having frequent intercourse with the pound-keeper for the purpose of obtaining accurate knowledge of the proceedings with him from time to time, could have been ignorant of the conduct of the pound-keeper. But, allowing that the defendant was in fact ignorant of what the pound-keeper had wrongfully done, he still must be held as having sold the oxen by mistake, and is, therefore, chargeable for the act done. There was also extraordinary delay here, more than twenty days having elapsed from the first taking

of the oxen prior to the day of sale, and unreasonable expense was thus created in keeping the oxen.

This delay of itself was enough to put a person on inquiry for the reasons of it.

Whatever puts a person upon inquiry is notice to him of all the facts which such inquiry would have disclosed.   8 Conn. 389.

Take the Massachusetts doctrine as correct, in its broadest extent, that each officer or agent is to be held responsible for his own acts and wrong, how can the defendant free himself from responsibility ? He must protect himself by a legal warrant of sale, before he can sell at auction.

The burden is thus cast upon the defendant to show that the justice of the peace had jurisdiction over the application of the party, and hence rightful authority to issue his warrant of sale.

*Parsons*, C. J., says, in *Barge* v. *Ford*, 4 Mass. 643, we can not presume any thing in favor of the jurisdiction of an inferior magistrate. As it is not general, but given and limited by particular statutes, the principle is universal, that whenever any persons assume to act under a special and limited power, conferred by law, their doings may be avoided by showing that they had no jurisdiction, or that they had exceeded the limits of their authority.   *Sanborn* v. *Fellows*, 22 N. H. 473 ; *State* v. *Richmond*, 26 N. H. 236.

Proceedings of inferior courts may be treated as invalid by those who have cause to complain of them.   Here the chain was broken by the misconduct of the pound-keeper.   He was afterward disabled from acquiring jurisdiction over the oxen by any proceedings. Neither could jurisdiction be acquired by the magistrate, so as to clothe another with legal control over the oxen.   The proceedings of the magistrate in this case were simply void, and the defendant became a trespasser for selling the cattle under his pretended authority or warrant of sale.

There must therefore be

*Judgment on the verdict for the plaintiff.*