## ROBERT HOLYOKE v. GRAND TRUNK RAILWAY.

In this class of cases, the plaintiff is entitled to receive, as damages, one compensation for all injuries, past and prospective, in consequence of the defendants' wrongful or negligent acts.

They are understood to embrace indemnity for actual nursing and medical expenses, and loss of time, or loss from inability to perform ordinary labor, or capacity to earn money.

Plaintiff is to have a reasonable satisfaction for loss of both bodily and mental powers, or for actual suffering both of the body and mind, which are the immediate and necessary consequences of the injury.

Plaintiff will not be entitled to special damages on account of his particular calling or profession.

The court will not set aside a verdict, when the judge, who tried the case, in his discretion, admitted testimony, showing the general bad state of the defendants' track for miles distant from the place of accident, as one of the causes probably contributing to the accident, which occasioned the injury to plaintiff.

CASE for injuries received by plaintiff, August 24, 1864, while travelling as a passenger on defendants' road. Writ dated September 27th, 1865. Plaintiff was described as a "trader," and it was alleged, as one ground of damage, that he had, since the injury, been unable to attend to his business. The declaration contained two counts, one alleging negligence in the management of the train, and the other alleging that the track was in a defective condition through the negligence of the defendants. Either party may refer to the declaration as a part of the case.

The court ruled that under this declaration plaintiff could not be allowed to show the profits of his business prior to the accident, but that plaintiff might introduce evidence to show the kind and amount of mental and physical labor which he was accustomed to do before receiving the injury, as compared with that which he had been able to do since, for the purpose of aiding the jury to determine what compensation he should receive for his loss of mental and physical capacity. Under this ruling, plaintiff testified that his occupation was that of a timber merchant, and testified as to the nature of the business of his firm and the part he took in it before and since the accident, and that he had, according to the best estimate he could form, lost one third of his time, in comparison with the years prior to the injury. This evidence was admitted subject to defendants' exception.

The court instructed the jury, in reference to this evidence, in substance as follows : "That if the defendants were liable in the action, the plaintiff was entitled to recover, as part of his damages, compensation for his loss of physical and mental capacity, so far as proved to have been caused solely by the defendants' negligence ; that there was no rule of law that one man was or was not exactly like another ; that it was a question of fact for the jury, what injury the plaintiff had suffered by the defendants' negligence, not what any other man had suffered ; that the evidence of his occupation and capacity was admissible on –

ly in order to enable the jury to judge of the injury to his capacity; that this was an action for an injury to the man, and not for interfering with his business, and the damages must be limited to the personal injury to him, occasioned by the defendants' negligence. (These instructions are taken from *Ballou* v. *Farnum*, 11 Allen 73, page 74.)

Plaintiff claimed exemplary damages, and to sustain this claim, after proving the condition of the track at the place of the accident, he offered evidence that the defendants' track at the time of the accident was in a defective, unsafe, and dangerous condition in other places; offering evidence of its condition on the five-mile section which included the place of the accident, and also evidence of its condition between Island Pond, Vermont, and Portland, Maine. The court ruled that the evidence was not admissible for the purpose, and plaintiff excepted.

It appeared in evidence that the train on which the plaintiff was a passenger, had run from Island Pond to the place of the accident, near Stark; that it was running at a very rapid rate, at or near midnight, round a short, sharp curve, when the car in which the plaintiff was riding was precipitated down an embankment into a mill-pond. The court allowed plaintiff to prove that the track between Island Pond and the place of the accident (about 34 miles), was in an uneven condition, by means of the ties being somewhat decayed, and the rails were very much worn in many places, and had become battered. This evidence was admitted for the sole purpose of showing that the condition of the track was such as would have a tendency to injure the wheels of the train which met with the accident; and the jury were instructed that the condition of the track in other places was not evidence to be considered on the question of exemplary damages, but that they should consider only the circumstances attendant on this accident, and which tended directly to contribute to it. To the admission of this evidence defendants excepted.

Plaintiff offered, as bearing on the question whether the accident was one for which defendants were liable, to show that repairs were made on defendants' track at the place of the accident, under the authority and direction of defendants' road-master, within three or four days after the accident. The court rejected the evidence, and plaintiff excepted.

The jury returned a verdict for plaintiff, with damages assessed at three thousand dollars. Both sides moved to set aside the verdict, on account of the above rulings, excepted to by them respectively.

No exception was taken to the instructions of the court regarding actual and exemplary damages; but defendants moved to set aside the verdict on the ground that the damages were excessive.

Plaintiff's evidence bearing on actual damages was, in brief, that he received injuries on his leg and eye-brow, which soon healed; that his shoulder was injured so severely that for several days he suffered a very acute pain not relieved by large doses of opium, and was much broken of his rest; that he was for one week or more confined to his house; that it was two months before he did any business; that he had been unable to attend to business since the accident as he did before, having lost a third of his time; that at first he could not move his arm at all,

and that he had never recovered the upward motion of his shoulder; and the plaintiff's attendant physician testified that he did not think plaintiff's arm (or shoulder) would ever recover entirely, and that, in his opinion, there was now a decided difference between the plaintiff's right and left shoulder—the injured shoulder being a little less round than the other; also, that he had been plaintiff's family physician from ten to fourteen years; that he thought plaintiff's nervous system was not in so good condition since the accident as before; and that such an injury as plaintiff received is liable to affect the general health—the nervous system receiving a shock from which it frequently fails to recover perfect tone and power.

It also appeared that plaintiff had probably expended more than forty dollars for medicines and medical attendance and advice; and that plaintiff had gone away from home two or three autumns since the accident, and been absent from one to two months, to get rested, and get rid of his troubles, instead of remaining at home and attending to business.

It appeared that one set of wheels on the car which ran off were one and one-fourth or one and one half-inches too narrow guage for the road, that the rails where the car ran off were defective, that the train was running at an unusually rapid speed in the night, and that the curve, where the accident occurred, was short and sharp, and that the car was precipitated down an embankment into a mill-pond, where the car was turned bottom side up, and the lowest part of the car was in three or four feet of water and about twelve feet below the track.

The court instructed the jury that if they found the accident was owing to the gross, great, exceeding negligence of defendants, they might, in their discretion, give exemplary damages, but that they were not bound to do so.

Defendants called no witnesses.

The questions of law arising on the foregoing case were reserved and assigned to the Law Term.

*Fletcher* for defendants.

1. The admission of the evidence to show the plaintiff's kind of business, and his estimate of loss of time after accident, was wrong. There was no foundation laid in the declaration for such evidence, as in *Ballou* v. *Farnum*, 11 Allen 73, referred to in printed case. In this case the writ states, by way of addition, Holyoke's mystery; that he was a " trader," and the proof was that he was a " timber merchant," a clear variance. Starkie on Slander, 113 ; 2 Starkie's Ev. 459, n. 1. The addition is no part of the declaration, and was only required by the Statute of Henry I, to indentify the defendant in personal actions.

It appears from the opinion of Judge Colt in *Ballou* v. *Farnum*, that it was averred in that case "that plaintiff being a manufacturer before the accident, and able to earn large sums of money, he was by the injury rendered unable to labor, and to conduct his business ;" and he goes on and says "that no objection was made to the *form* of the allegation ."

In Holyoke's declaration, no special matter whatever on this point is stated; whereas the grounds of special damages, by the common law, to give notice to the adverse party, to preserve uniformity and good pleading, should be distinctly averred. *Baldwin* v. *Western Railroad*, 4 Gray 333.

2. The evidence offered by plaintiff to show that the road or track was out of repair, except at the place of accident was properly rejected, and was equally inadmissible for the purpose for which it was received. It was a mere pretext, and had its effect on the jury in enhancing damages, notwithstanding what the presiding justice said to them as to what purposes only they should consider it.

*Ray & Ladd* for plaintiff.

1. The defendants' argument seems to be based upon a misapprehension of the case. No special damage was claimed upon the trial, and no evidence of special or consequential damage was admitted. The suit was to recover damages for direct injuries to the person caused by defendants' fault. The person embraces body and mind; and there was no way in which the jury could be informed of the extent of the injury, but by showing the strength and ability of the person, mental and physical, before the injury, and his weakness and inability afterwards. By showing the loss of strength or weakness, we show what a person can or cannot do.

2. No damage was claimed on the ground that the plaintiff was a "timber merchant"; evidence of the profits of that business being ruled out. The instructions to the jury sufficiently protected the defendants from any other effect of the evidence except what was legal and proper. The authority referred to in the printed case fully sustains the doctrine for which we contend. *Lincoln* v. *Saratoga & Schenectady Railroad*, 23 Wend. 425, cited in note to 2 Redfield on Railways 222, as we understand it, goes much further.

3. There was evidence that one set of tracks on the car in which the plaintiff was, when plunged over the bank, were out of place on the axle, being one and one-fourth or one and one-half inches too narrow gauge. It was incumbent on the plaintiff to show that the accident was caused by the negligence of defendants in order to fix their liability at all. The claim was that the condition of the wheels contributed to and perhaps caused the accident; then the question would be : Were those wheels in that unsafe and dangerous condition by the fault and negligence of the defendants, or was it the result of a cause which they could not foresee and provide against? It was the duty of the defendants to have their track in good condition. Those wheels had just been run over a track in bad condition. Could the court say, as a matter of law, that such usage of the wheels just before they precipitated the train from the track was not the cause which displaced or contributed to displace them on the axle?

NESMITH, J. The plaintiff claimed indemnity for injuries received

by him while a passenger in the cars of the defendants' road, as located in this State. The averments in his writ appear to be such as are generally used in such cases.

Some question is made as to plaintiff's right to recover the damages claimed by him under his general declaration. It seems to be settled, that he is entitled to recover one compensation for all his injuries, past and prospective, in consequence of the defendants' wrongful or negligent acts. Damages are presumed to embrace indemnity for actual nursing and medical expenses, also loss of time or loss from inability to perform ordinary labor, or capacity to earn money. Plaintiff is to have a reasonable satisfaction for loss of both bodily and mental powers, or for actual suffering both of the body and mind, which are shown to be the immediate and necessary consequences of the injury wrongfully received. Also exemplary damages may sometimes be recovered in this form of action, embracing cases of gross negligence. *Hopkins* v. *Atlantic & St. Lawrence Railroad*, 36 N. H. 14; *Shaw* v. *The Boston & Worcester Railroad*, 8 Gray 82; *Ransom* v. *The New York & Erie Railroad*, 1 E. D. Smith, or 15 N. Y. 415; *Theobald* v. *The Railway Passenger Insurance Company*, 26 Eng. Law. & Eq. Reports 432; 18 Adolphus & Ellis Rep. N. S. 93; *Blake* v. *The Midland Railway Company*, 10 Eng. Law & Eq. Rep. 437; *Linsley* v. *Bushnell*, 15 Conn. Rep. 225; *Segar* v. *The Town of Barkhamsted*, 22 Conn. Rep. 290; *Canning* v. *Williamstown*, 1 Cush. 451; *Lincoln* v. *Saratoga & Schenectady Railroad*, 23 Wend. 425; *Caldwell* v. *Murphy*, 1 Duer 233; *Perkins* v. *The Concord Railroad*, 44 N. H.

Plaintiff will not be entitled to special damages on account of any particular calling or profession. The injury is personal to the man. The description in plaintiff's writ, designating him as a timber-merchant, was merely *descriptio personæ*, inserted there for identification and nothing more. We do not understand that plaintiff's declaration in his writ contained any averment, under which he could claim damages in consequence of his trade; or that the law would allow his damages to be enhanced on any such account. Such averment, if made, would simply be immaterial and of no advantage to the plaintiff. Upon this part of the case we do not think the defendants have any grounds to complain of the ruling of the court. *Ballou* v. *Farnum*, 11 Allen 73.

We state the theory of the law on this subject; but in actual practice, juries, in making their estimate of a party's loss of time, and sufferings, are apt to be much influenced by his rank in society, or relative merits and position in life, and will be likely to inquire into the particular business or pursuit in which he may have been engaged when the injury was inflicted upon him.

Again plaintiff alleged negligence on the part of the defendants, in keeping their track in suitable repair and in the management of their train when the accident happened to him. One piece of evidence relied on to sustain this view was, that the train was running at an unusually rapid rate of speed, at or near midnight, around a sharp curve.

Whether this rapidity of speed constituted negligence must depend in part on what kind of a train it was, or whether the car wheels and other furniture were in good repair or position, or battered or worn, or whether the track, over which they had been running, was rough or smooth. These are some of the proper elements to be weighed in determining the character of the accident. Previous hard usage of a track would be evidence tending to show present bad condition. If, contrary to the probable presumption, the car-wheels were not injured by the bad condition of the road, it was open to the plaintiff to have shown that fact to the satisfaction of the jury. The actual state, both of their track and wheels was much more within their knowledge than the plaintiff's.

The probability that the defendants' car-wheels were unfit when they were originally put on, or were rendered so by the roughness of the track, was enhanced by the fact that one set of wheels on the car, which run off, were either one and one-fourth or one and one-half inches too narrow a guage for the road-bed or track. It is manifest that such wheels were originally unfit to be used as they were, or would be more likely to be battered or injured by defective rails, than would wheels of a proper guage, and would be likely to be injured by running for many miles on such defective track.

It appears to us, that, upon principle, this evidence was legally competent for the jury to weigh. The only doubt is, whether it was not too remote; but, we think the decision of the question of remoteness was within the discretion of the judge who tried the case, and we now think that discretion was properly exercised in this instance; and, therefore, the defendants' exception to this evidence is overruled, and there must be

*Judgment on the verdict.*