DOROTHY B. JOHNSEN

v.

DAVID FERNALD

June 18, 1980

*Gerald F. Giles*, of Portsmouth, by brief and orally, for the plaintiff.

*Wiggin & Nourie*, of Manchester (*Richard B. McNamara* orally), for the defendant.

BROCK, J. This is an action to. recover damages for personal injuries resulting from a motor vehicle accident. Trial before a jury resulted in a verdict in the amount of ten thousand dollars for the plaintiff. The defendant admitted liability before trial and the sole issue on this appeal relates to rulings made by the Trial Court (*Mullavey*, J.) concerning the measure of damages to be applied by the jury.

The plaintiff, a passenger in a small sports car, suffered numerous injuries when a pickup truck, operated by the defendant, rear-ended the sports car while it was stopped at a blinking traffic light. The plaintiff brought this action alleging that her injuries were the result of the defendant's "careless, negligent and unlawful operation" of a motor vehicle in that "he failed to maintain a proper look-out, failed to maintain control of his motor vehicle, was operating at a speed greater than was reasonable and prudent, was under the influence of an intoxicating liquor at the time of the collision and was otherwise negligent . . . ." At trial, in spite of the fact that the defendant had admitted liability, the plaintiff offered to prove that the defendant was under the influence of alcohol at the time of the accident and that

after the accident he was arrested for D.W.I., second offense and later pled guilty to D.W.I., first offense. In conjunction with these offers of proof, the plaintiff requested that the jury be instructed that they could use this evidence of the defendant's conduct, if they found it to be "wanton", and that they could reflect the aggravating nature of that conduct in their award of compensatory damages to the plaintiff. The trial court ruled that the proffered evidence of the defendant's conduct was not admissible for the purpose of enhancing damages. The plaintiff took a timely exception to this ruling and, after the jury returned its verdict, her exception was reserved and transferred to this court. We affirm.

The plaintiff argues that when a tortfeasor's conduct is wanton, malicious or oppressive, the measure of damages may be enhanced to reflect the nature of the defendant's conduct. As support for this contention, the plaintiff relies on *Vratsenes v. New Hampshire Auto, Inc.*, 112 N.H. 71, 289 A.2d 66 (1972). In *Vratsenes*, we made the following observation:

> [N]o damages other than compensatory are to be awarded. However, when the act involved is wanton, malicious, or oppressive, the compensatory damages may reflect the aggravating circumstances.

*Id.* at 73, 289 A.2d at 68. The tort involved in *Vratsenes*, however, was trespass, and the plaintiff there alleged that it was a "willful and malicious" trespass, the defendant having previously committed a similar act. *Id.* at 71, 289 A.2d at 67. Such an allegation is absent in the present case.

Though the plaintiff admits that wanton, malicious or oppressive conduct was not specifically alleged in her writ, she cites *Taylor v. Superior Court*, 157 Cal. Rptr. 693, 598 P.2d 854 (1979) as authority for the proposition that the allegation of driving while under the influence alone amounts to an allegation of wanton or malicious conduct. *Id.* at 669, 598 P.2d at 859. The act of operating a motor vehicle while under the influence is indeed deplorable and should the legislature determine, as a matter of public policy, that those who cause injuries while driving under the influence should be liable for enhanced damages, it is free to do so. *Cf.* RSA 466:20 (double damages for dogbite victims). In the context of measuring damages, however, we do not equate the act of driving while under the influence with the term "malice". Our statement in *Munson v. Raudonis*, 118 N.H. 474, 479, 387 A.2d 1174, 1177 (1978) is applicable today:

> If we were to agree with the plaintiff and hold that "malice" for the purpose of measuring damages is the intentional doing of a wrongful act, then every intentional tort would give rise to the larger amount of damages. Instead of allowing an award of damages to be based on implied or legal malice . . . we prefer to base such an award only on a showing of actual malice. There must be ill will, hatred, hostility, or evil motive on the part of the defendant.

In *Munson*, we refused to equate an intentional tort with malice for the purpose of enhancing damages and stated that "liberal compensatory damages will not be allowed without the *allegation* and proof of wanton, malicious, or oppressive conduct." *Id.* at 479, A.2d at 1177 (emphasis added.) (Note, A.2d reporter deleted portion of the quote.) It is only logical that the same rule apply to the unintentional tort of negligence.

*Plaintiff's exceptions overruled; affirmed.*

DOUGLAS, J., concurred specially; the others concurred.

DOUGLAS, J., concurring specially:

I agree with the result in this case only because I think the plaintiff's failure to allege wanton, malicious, or oppressive conduct is dispositive. *Munson v. Raudonis*, 118 N.H. 474, 479, 387 A.2d 1174, 1177 (1978). However, I believe that this court should have made it clear that had the plaintiff's pleading conformed with the rule in *Munson*, evidence relating to the defendant's drunken state at the time of the accident would have been admissible on the issue of enhanced damages, regardless of whether the defendant admitted liability.

Before moving to a discussion of the law and public policy supporting my position, I note that at least fourteen jurisdictions have held that such evidence as was offered in the present case is admissible on the question of punitive damages. Annot., Punitive Damages—Intoxication of Driver, 65 A.L.R.3d 656 (1975). *See, e.g., Taylor v. Superior Ct. of Los Angeles City*, 157 Cal. Rptr. 693, 598 P.2d 854 (1979). Of course, in this State punitive damages are not permitted, but I see no reason why we should not allow enhanced compensatory damages in personal injury cases involving intoxicated drivers rather than wait for the legislature to act.

In *Bixby v. Dunlap*, 56 N.H. 456 (1876), we find this court's first

clear statement of the rule that enhanced compensatory damages are available under certain circumstances.

> [I]f . . . the defendant has been malicious, the rule of damages will be more liberal . . . instead of awarding damages only for those matters which are capable of exact pecuniary valuation, they [the jury] may take into consideration all the circumstances of aggravation . . . and endeavor . . . to award such damages by way of compensation . . . as the plaintiff on the whole ought to receive and the defendant ought to pay.

*Id.* at 464. The court further explained that such enhanced damages are not punitive in nature, nor are they to be considered as a sum awarded in addition to the actual damage and separate from it. They are merely the actual damage, estimated by the more liberal rule that prevails in the case of malicious wrongs. *Id.* at 464–65.

Thirty-five years after *Bixby*, in *McBride v. Huckins*, 76 N.H. 206, 81 A. 528 (1911), this court allowed enhanced damages on facts that demonstrate that something less than actual malice or ill will toward the specific plaintiff will support application of the liberal damages rule. The defendants, physicians with little or no surgical experience, incorrectly diagnosed the plaintiff as requiring an arm amputation. Said the court, "their attempt to do what they knew they were not qualified to do would furnish ground for the application of [the liberal] rule of damages . . . ." *Id.* at 215, 81 A. at 533. The reason, said the court, was that "[the defendants'] incompetency which the plaintiff sought to guard against might cause very deep regret in his mind, for which he ought to receive compensation and for which the defendants ought to make amends." *Id.* at 216, 81 A. at 533.

Entirely consistent with *McBride*, though decided fifty years later, is *Chagnon v. Union-Leader Corp.*, 103 N.H. 426, 174 A.2d 825 (1961). In that case liberal damages were allowed against the defendant newspaper because it "maliciously" printed articles that injured the plaintiff's personal and business reputation. This court adopted as its own the trial court's statement to the jury that "by malice [is meant] not only ill will, evil motive or intention to injure but also a wanton disregard of the rights of others and the consequences to follow." *Id.* at 438, 174 A.2d at 833. The court found malice, basically because the defendant avoided opportunities to substantiate the articles relating to the plaintiff, and, quoting *McBride*, allowed enhanced damages.

*McBride* and *Union-Leader*, read together, stand for the proposition that if a defendant is not competent or not qualified to do an act, and if he does it in wanton disregard of the rights of those who might thereby be injured, enhanced or liberal damages may be assessed against him. Indeed, *Vratsenes v. N.H. Auto, Inc.*, 112 N.H. 71, 289 A.2d 66 (1972), makes it clear that wantonness of the sort identified in *Union-Leader* is itself enough to support enhanced damages. In *Vratsenes* we stated that the liberal rule could be applied when the defendant has performed a "wanton, malicious, *or* oppressive act." *Id.* at 73, 289 A.2d at 68 (emphasis added). *See also Morris v. Ciborowski*, 113 N.H. 563, 311 A.2d 296 (1973).

The majority's use of the *Munson* case suggests that the case precludes an award of enhanced damages in the present case whether or not the plaintiff pleaded wanton, malicious or oppressive conduct. If that is the court's view, I disagree with it. First, *Munson* overruled none of the cases I have cited and discussed, and it must be read in conjunction with them. Second, *Munson* did not discuss the elements of wanton or oppressive conduct; it merely offered a perhaps overly restrictive definition of "malice". Finally, *Munson* is an intentional tort case. I believe it merely stands for the relatively innocuous proposition that not every intentional tort is attended by "malice". As I have illustrated, enhanced damages should be allowed in cases like the one at bar, not necessarily because driving while drunk is malicious, but because it is in wanton and deplorable disregard for the rights of others to drive our highways in relative safety.

In my opinion all the above-mentioned cases lead to the conclusion that enhanced damages should be allowed by this court in cases involving injuries caused by drunken drivers. When a person drinks to excess, knowing he will soon be driving, he sets out to do something that he knows he is not able to do, that is, he intends to drive when he knows his ability to safely do so will be essentially impaired. In this critical sense he is no different from the incompetent physicians in *McBride*. Further, it cannot seriously be denied that when a person becomes intoxicated with the intention of driving while in that condition, he acts in "wanton disregard of the rights of others and the consequences to follow." *Chagnon v. Union-Leader Corp. supra*, 103 N.H. at 438, 174 A.2d at 833. Certainly persons needlessly injured through the wanton conduct of drunken drivers must feel the "deep regret" that we have said merits compensation. *McBride v. Huckins supra; see*

*Vratsenes v. N.H. Auto, Inc. supra; Friel v. Plumer*, 69 N.H. 498, 43 A. 618 (1898); *Kimball v. Holmes*, 60 N.H. 163 (1880).

Of course, the allowance of enhanced damages in injury-causing drunken driving cases may be appropriate for public policy, as well as legal, reasons. That drunken drivers have had a lethal impact on our society is well documented. In New Hampshire, according to our department of safety, approximately half of those 184 persons who died on our highways in 1979 were killed by intoxicated drivers. (N.H. Highway Safety Agency *Bulletin*, January, 1980). In this statistic, New Hampshire is representative. According to the Third Special Report to the U.S. Congress on Alcohol and Health, filed by the Secretary of Health, Education, and Welfare in 1978, one-half of all traffic fatalities are alcohol-related. This amounts to about 25,000 persons annually. In my view, it is this court's public responsibility to weigh the deterrent function of enhanced damages and to allow juries to recognize the severe threat to public safety posed by intoxicated drivers as we formulate our damage assessment rules.

> One who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed reasonably may be held to exhibit a conscious disregard of the safety of others. The effect may be lethal whether or not the driver had a prior history of drunk driving incidents. *Taylor v. Superior Ct. of Los Angeles Cty*, 157 Cal. Rptr. 693, 697, 598 P.2d 854, 857 (1979).

Further, I do not think that a rule allowing enhanced compensatory damages in drunk driver cases will pose a problem for the jury. It is unlikely that they will abuse the rule by awarding liberal damages in cases in which the blameworthy driver had been drinking but not to the point of impairment. The average jury should be instructed that a BAC (blood alcohol content) of .10 or above is considered to be prima facie evidence of impaired ability to operate a car. *See* RSA 262-A:63. If the defendant's BAC is not available in a given case, evidence could be admitted relating to the number of drinks consumed, body weight, time elapsed between and after the drinks, *et cetera*. The jury could easily be instructed to weigh these facts along with the other circumstances of the case.

In the case at hand plaintiff offered to prove that defendant failed to decrease his speed and drove through the small sports car in which plaintiff was a passenger. Defendant was arrested for DWI, second offense, and thus joined the ranks of 8,503 other persons arrested for drinking and driving offenses in 1977. The defendant's blood alcohol content of .23 meant that if he was of average weight (160 pounds) he had consumed at least 10 drinks prior to driving.

Statistics, criminal law and public policy all agree that driving while intoxicated should be discouraged. If in the future we refuse to permit enhanced damages in cases like the one at bar, we will act contrary to the case law in this jurisdiction and, in my opinion, against public policy.