Hillsborough
No. 78-014

HELEN MUNSON

v.

ALPHONSE J. RAUDONIS, EXECUTOR,
ESTATE OF MARY E. SMITH

June 27, 1978

*Leonard, Prolman, Gall, Shapiro & Jordan P.A.*, of Nashua (*William J. Groff* and *Ellen L. Cronin* orally), for the plaintiff.

*Brown & Nixon P.A.*, of Manchester (*Randolph J. Reis* orally), for the defendant.

LAMPRON, J.   In this case the plaintiff alleges two causes of action, one in quantum meruit for the value of her services to the decedent and one in deceit. The defendant moved to dismiss both counts on the basis that they are barred by the Statute of Frauds and the statute of limitations. The Superior Court (*Mullavey*, J.) transferred without ruling seventeen questions of law upon an agreed statement of facts. Eight of these questions involve the admissibility of evidence which we will not answer for the reasons hereinafter stated. The parties agree that six of the questions are uncontested. Therefore, there remain only three contested nonevidentiary questions, which we will answer.

The agreed statement of facts may be summarized as follows. The plaintiff was raised by her aunt and uncle, William and Mary Smith, on their farm in Pelham. In 1951, at age 20, the plaintiff was married, and moved to Nashua. In 1966 Mary Smith developed a thyroid problem which required medical treatment. At that time William and Mary both promised the plaintiff that if she would take care of them, everything would go to her after they died.

In February 1968, "the Smiths executed wills by which each of them left the entire estate to each other and if they predeceased each other, the estate was devised to plaintiff." The plaintiff knew of the execution of these wills and was made aware of the provisions shortly after their execution. In July 1968, Mary executed a second will which revoked the first will. The plaintiff claims not to have been aware of the execution of this second will. This second will bequeathed five hundred dollars to seven relatives, including the plaintiff, and devised the residue of the estate in equal shares to the plaintiff, another niece, two sisters and a brother of testatrix. William Smith did not execute a second will.

In July 1971, William died. Plaintiff alleges that on several occasions between 1966 and Mary Smith's death in 1975, Mary repeated her promise to the plaintiff that she would receive everything for taking care of Mary and William. Plaintiff contends that at various times from 1966 until her death, Mary made statements to third persons that plaintiff would receive the entire estate. During the period from 1966 until Mary's death the plaintiff performed many and varied personal services, taking care of her aunt and uncle and their farm. Plaintiff alleges that as her aunt and uncle grew older the time and effort involved in rendering these services increased.

In June 1974, plaintiff purchased a three-acre parcel of land in Pelham from Mary for $4,000. The land was part of the farm and was located across the streeet from Mary's residence. Plaintiff began constructing a new home on the land, she sold her home in Nashua and moved to Pelham before the new home was completed. When Mary Smith died in January 1975, the plaintiff received a copy of the second will. She contends this was the first time she was aware that she was not to receive the entire estate.

The plaintiff's declaration contained a count in quantum meruit for the reasonable value of the services she had rendered to her aunt, and a count in deceit for an alleged misrepresentation in the sale of the real estate to the plaintiff by the decedent. Plaintiff thereafter amended her writ in order to include in the count in deceit an ad damnum clause which claimed that the plaintiff suffered "severe emotional and physical distress, vexation, damage to her family relationship, insult and degradation, and other aggravated injuries and losses all to the damage of the plaintiff as she says the sum of . . . ($100,000.00) Dollars."

The following questions are presented:

4. Does the Statute of Frauds bar count II of plaintiff's action (Deceit)?

. . . .

6. Are punitive or exemplary damages allowable in an action in deceit, absent allegations or proof of wrongful, malicious or vengeful conduct on the part of decedent?

. . . .

8. If Count II of plaintiff's claim, alleging fraud and deceit, did survive the death of decedent, does the claim for punitive or exemplary damages survive the death of decedent?

For the following reasons we answer "No" to questions 4 and 6, and "Yes" to question 8.

### I. *Deceit*

The basis of plaintiff's deceit claim is that the decedent, in selling plaintiff the three-acre parcel of land in Pelham, falsely represented that the plaintiff would receive all of the decedent's land upon the decedent's death, and that this misrepresentation induced the plaintiff to purchase this land and to build a home on it. The plaintiff argues that false representations in connection with a contract are generally not required to be in writing in order to sustain an action in deceit, and cites 37 C.J.S. *Frauds, Statute of* § 32 (1943) as authority. The defendant argues that the plaintiff has not stated a cause of action in deceit. He claims that mere refusal to carry out an oral promise to convey land is neither fraud nor other ground for relief, and that therefore the plaintiff is attempting to enforce an oral agreement to leave real estate by will, which is unenforceable because of the Statute of Frauds. When the arguments of the parties are unraveled, it can be seen that they concern two different points, i.e., whether a deceit action lies for the breach of a promise and whether the Statute of Frauds applies to such a promise in a deceit action. We will address each of these.

It is undisputed that an oral contract to leave real estate by will is unenforceable under the Statute of Frauds. *Blanchard v. Calderwood*, 110 N.H. 29, 260 A.2d 118 (1969); *Lemire v. Haley*, 91 N.H. 357, 19 A.2d 436 (1941); RSA 506:1. If the plaintiff were attempting to enforce the alleged contract, she would be clearly barred. The plaintiff, however, is attempting to recover on the oral promise by an action in deceit. In order to prevail in a deceit action, the plaintiff must prove that there was a misrepresentation of fact. The mere breach of a promise is not enough by itself to establish an action in deceit. 1 F. Harper and F. James, The Law of Torts § 7.10 (1956); W. Prosser, The Law of Torts § 109, at 728 (1971). However, a promise to perform in the future carries with it an implied representation that the speaker has a present intent to fulfill his promise. If the speaker makes a promise and at the same time intends not to perform, this operates as a misrepresentation of the speaker's state of mind and is a proper basis for an action in deceit. This has long been the law in this State. *Hunt v. The Goodimate Co.*, 94 N.H. 421, 55 A.2d 75 (1947); *Morgan v. Morgan*, 94 N.H. 116, 47 A.2d 569 (1946); *Charpentier v. Socony-Vacuum Oil Co.*, 91 N.H. 38, 13

A.2d 141 (1940) (applying Massachusetts law). The plaintiff's writ is not as clear as it could be on this point, but it seems to allege that the decedent misrepresented her state of mind when the promise was made.

The next question is whether an action in deceit can be maintained when the actual promise that was breached cannot be enforced due to the Statute of Frauds. The argument is that to allow the deceit action is "to circumvent the statute of frauds through a 'northwest passage'. . . ." F. Harper and F. James, *supra* at 573. Barring an action in deceit because of the Statute of Frauds, however, would not further the policy of the statute. Quite the contrary, it would foster an injustice. "[I]t does not follow that in a case where the promisor was being dishonest at the time the contract was made, he should be permitted to hide behind the Statute of Frauds, or use the Statute of Frauds itself as a means of perpetrating a fraud." Keeton, *Fraud-Statements of Intention*, 15 Texas L. Rev. 185, 201 (1937).

■ We see no reason to apply the bar of the Statute of Frauds to this action in deceit. We have previously held that a false statement of one's intent to perform an oral promise required to be in writing by the Statute of Frauds is actionable. *Morgan v. Morgan*, 94 N.H. 116, 47 A.2d 569 (1946). The *Morgan* case involved equitable relief rather than a suit at law for damages. Although there appears to be authority for allowing equitable relief in a case such as this but denying recovery in an action at law in deceit, F. Harper and F. James, *supra* at 573; *Keeton, supra* at 216–20, we perceive no reason for distinguishing between the remedies. To allow equitable relief but to deny damages for deceit would be to create a distinction without a substantive difference.

The answer to question 4 is therefore "No," the Statute of Frauds does not bar count II of plaintiff's action.

II. *Punitive or Exemplary Damages*

■ Both parties agree that the law of this State does not allow a defendant to be punished by being held liable for punitive or exemplary damages. *See Vratsenes v. N.H. Auto, Inc.*, 112 N.H. 71, 73, 289 A.2d 66, 68 (1972). A plaintiff is to be awarded compensatory damages only. "However, when the act involved is wanton, malicious, or oppressive, the compensatory damages awarded may reflect the aggravating circumstances." *Id.*

It is uncontested that the plaintiff here is seeking liberal compensatory damages for aggravated circumstances. She contends, however,

that she does not have to plead or prove that the decedent's conduct was wanton, malicious, or oppressive. According to the plaintiff, the mere allegation and proof of deceit triggers the application of the liberal rule of compensatory damages without further proof of malice because an act of deceit contains legal malice, i.e., the intentional doing of a wrongful act. We disagree.

A review of our law indicates that liberal compensatory damages are to be awarded only in exceptional cases, and not in every case involving an intentional tort. If we were to agree with the plaintiff and hold that "malice" for the purpose of measuring damages is the intentional doing of a wrongful act, then every intentional tort would give rise to the larger amount of damages. Instead of allowing an award of damages to be based on implied or legal malice, *see* 52 Am. Jur. 2d *Malice* § 1 (1970); 25 C.J.S. *Damages* § 123(4) (1966), we prefer to base such an award only on a showing of actual malice. *See* W. Prosser, The Law of Torts § 2, at 10 n.65 (1971). There must be ill will, hatred, hostility, or evil motive on the part of the defendant. Without such a showing, the mere commission of a tort will not give rise to the aggravated circumstances necessary for the award of liberal compensatory damages.

The answer to question 6 is therefore "No," punitive or exemplary damages are not allowable in an action in deceit and liberal compensatory damages will not be allowed without the allegation and proof of wanton, malicious, or oppressive conduct.

### III. *Survival of the Claim for Aggravated Damages*

The defendant does not contest plaintiff's claim that the deceit action survived the death of the decedent. The defendant does, however, argue that since the purpose of exemplary damages is to punish the wrongdoer, her death destroys the right to such damages. This appears to be the general rule in other States. *See* 1 Am. Jur. 2d *Abatement, Survival, and Revival* § 59 (1962); 25 C.J.S. *Damages* § 125(3) (1966). Those States, however, seek to punish the wrongdoer through punitive damages. As discussed above, we do not seek to punish the wrongdoer, but only to compensate the plaintiff if she incurs aggravated damages due to the defendant's malicious behavior. Thus, when a cause of action survives the wrongdoer there is no reason to prevent the plaintiff from being fully compensated for her aggravated damages.

We therefore answer question 8 "Yes."

## IV. *Admissibility of Evidence*

Some evidentiary questions submitted to us dealt with the admissibility of corroborative proof of the oral agreement promising the plaintiff the estate remaining at the decease of the Smiths. Another question pertained to whether the value of Mary Smith's estate is admissible as evidence of the amount of damages to be recovered by the plaintiff. The remaining questions covered the admissibility of evidence of monies or property the plaintiff received from the Smiths during their lives and under the will of Mary Smith as affecting the amount of the plaintiff's recovery.

The answers to these questions depend in large measure on the general state of the record when the particular item of evidence is offered as well as its purpose and the method by which it is sought to be introduced. Orderly procedure requires that the relevancy and competency of the evidence be passed on by the trial court, who is in a position to make the necessary preliminary factual determinations, instead of by this court in advance of trial. For those reasons, we have chosen not to answer the submitted questions in this category.

*Remanded.*

BROCK, J., did not sit; the others concurred.