Guerin v. Fox                          CV-92-314-JD  08/30/95
                UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Armand Guerin, et al.

        v.                              Civil No. 92-314-JD

Richard O. Fox, et al.

                          O R D E R


     The plaintiffs, Ethel and Armand Guerin, filed this lawsuit

in state court to recover losses related to their possession and

operation of a business in Milan, New Hampshire.  The action was

removed to federal court by the defendant, the Resolution Trust

Corporation ("RTC"), which serves as receiver for the former

defendant, HomeBank, FSB ("HomeBank").  With the exception of

defendant Arthur Dupont ("Dupont"), all other named defendants

have been dismissed by prior order or agreement of the parties.

Before the court is the RTC's motion for summary judgment on

counts seven and eight of the plaintiffs' state court writ

(document no. 44).

                        Background[1]

     On or about October 15, 1985, and January 31, 1986, Richard

and Arleen Fox ("Foxes") executed two promissory notes to

HomeBank for approximately $80,000.  The notes were secured by

_____

     [1]The court's recitation of the facts relevant to the instant
motion are either not in dispute or have been alleged by the
plaintiff.

mortgage liens on property located in Milan, New Hampshire, and held by HomeBank. The Milan property included a retail store and two gasoline pumps which were operated as the Fox Country Store and Coffee Shop.[2]

On or about June 15, 1987, the Foxes filed for protection under Chapter 13 of the United States Bankruptcy Code. In October 1987, the bankruptcy court converted the Foxes' filing to a petition under Chapter 7 of the Bankruptcy Code.

On or about June 26, 1987, the plaintiffs and the Foxes executed a purchase and sale agreement ("P & S") under which the plaintiffs would purchase both the property and the business. At that time the Foxes encouraged the plaintiffs to take possession of the property, and to operate and invest money in the business. Subsequent to the signing of the P & S, but prior to the conveyance of title, the plaintiffs did, in fact, take possession and assume operation of the coffee shop and gas station.[3] According to the plaintiffs, officials from HomeBank also encouraged them to invest in and operate the business.

---

[2]Apparently, the Foxes were also indebted to the former owners of the property, Richard and Martha Holt, who held a $10,000 mortgage on the property.

[3]It is unclear from the record when the plaintiffs first occupied the property, although the pleadings suggest that they moved in some time prior to October 1987. See, e.g., RTC's Memorandum of Law in Support of Motion for Summary Judgment ("RTC's Memorandum of Law") at 3.

At the time they signed the P & S and took possession of the property the plaintiffs were not aware that the Foxes had previously filed for bankruptcy and, thus, did not know that title to the property was controlled by the bankruptcy court and could not be conveyed without court approval. See 11 U.S.C.A. § 541 (West 1993) (property interests considered part of bankruptcy estate). Defendant Arthur Dupont, the attorney who represented the Foxes before the bankruptcy court and during the negotiation and execution of the P & S, neither informed the plaintiffs that the Foxes previously had filed for bankruptcy nor suggested that the plaintiffs retain counsel to represent their interests relative to the P & S.

Following their occupation of the property, the plaintiffs negotiated with HomeBank to assume the Foxes' indebtedness on the premises. These negotiations ultimately resulted in the preparation of a formal commitment letter by HomeBank's attorney, which was mailed on February 22, 1989, and signed and returned by the plaintiffs on March 3, 1989. RTC's Memorandum of Law, attachment, correspondence from James Burns to Mr. and Mrs. Armand Guerin ("commitment letter"). The commitment letter provided, inter alia, that (1) the plaintiffs would assume the balance of the Foxes' loan obligations to HomeBank; (2) all unpaid interest on the Foxes' loans would be capitalized; (3) the

plaintiffs would make a $5,000 payment to the junior lienholders (Richard and Martha Holt) for the release of their second mortgage; (4) the plaintiffs would pay all property taxes and municipal assessments accrued to date of closing; and (5) Homebank would not warrant the condition of the property nor that of any site improvements. Id.

Following execution of the commitment letter, HomeBank and the plaintiffs jointly petitioned the bankruptcy trustee to permit the Foxes to transfer title to the property to the plaintiffs. RTC's Memorandum of Law at 3-4, attachment, affidavit of Ronald Beaudoin ("Beaudoin Affidavit") at ¶ 12. The bankruptcy trustee denied the petition and the Foxes have never been permitted to convey title to the plaintiffs.

The plaintiffs' difficulty with the property was compounded on May 3, 1989, when a motor vehicle swerved off the road and collided with the fuel pumps located in front of the country store.[4] Following a post-accident safety inspection, the Town of Milan ordered the plaintiffs to cease use of the damaged fuel pumps.[5] The town's order, in turn, caused the plaintiffs to

---

[4]The driver of the vehicle, Timothy Kay, was a named as a defendant in the original state court writ but later was dropped as a party.

[5]The Town of Milan was named as a defendant in the original state court writ but later was dropped as a party.

4

breach an agreement with their fuel supplier, who ultimately removed the pumps from the property.

Later that month the plaintiffs indicated that they no longer desired to consummate the deal agreed upon in the commitment letter. Instead, in a May 22, 1989, letter the plaintiffs' attorney wrote that they were "prepared to offer the Bank $30,000.00, which the Bank must finance, to purchase the property 'AS IS,' which should not be unattractive to the Bank due to the horrendous state the property is in." RTC's Memorandum of Law, exhibit B (correspondence from Edward Beasley to James Burns). The offer was not accepted and, since that time, the parties engaged in various other discussions but never finalized a financing agreement.

The plaintiffs have responded to interrogatories propounded by the RTC. In interrogatory numbers three and four the RTC asked:

> Do you assert that you had an agreement with Homebank, FSB, or with the RTC as Receiver for HomeBank, FSB, with respect to your occupation of the premises?
> If yes, what were the terms of the agreement?

Response:

> Yes. We did. We dealt with Donald Heath who was a vice president of Home Bank in Gorham. He sent us a letter telling us we could buy the store and assume the mortgage(s).
> We were given permission to buy the place, to move in, and to take it over. We were already in the store

5

and operating it at that time. We were informed by Mr. Gage and others that we would be able to purchase the store subject to the mortgages: also that this would require the approval of the Bankruptcy Court as the Foxes had filed for Bankruptcy through Arthur DuPont.

RTC's Memorandum of Law, attachment, Plaintiffs' Responses to RTC's First Set of Interrogatories ("Plaintiffs' Responses to Interrogatories").

In interrogatory number 15 the RTC asked:

Please state each and every representation or assurance that you allege was intentionally made by HomeBank, FSB through its officers and employees that you believe formed the basis of your claim.

Response:

See copy of letter dated Feb. 22, 1989. We were assured by both Mr. Heath and Ronald Bowdoin that we could buy the store in Milan. We relied on this. However we never were able to obtain a deed.
See copy of letter from Attorney Beasley dated June 7, 1989 addressed to Attorney James Burns. Copy attached.

Id.

And in interrogatory number 16 the RTC asked:

What do you believe HomeBank, FSB or the RTC as Receiver for HomeBank, FSB has done or failed to do in resolving this matter.

Response:

We believe the Home Bank failed to cooperate with us in the purchase of the property on which it held a mortgage. We know that part of the fault was with Mr. Dupont in failing to obtain permission from the

6

> Bankruptcy Court to execute a deed in the property
> [sic].

Id.

## Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993), cert. denied, 115 S. Ct. 56 (1994) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st

7

Cir. 1990), <u>cert. denied</u>, 112 S. Ct. 2965 (1992)).  However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

In its motion, the RTC asserts that it is entitled to summary judgment on counts seven and eight of the state court writ on the grounds that the plaintiffs have failed to allege facts necessary to support the elements of the claims of negligent misrepresentation and intentional misrepresentation. Motion for Summary Judgment at ¶¶ 3-5.  The plaintiffs have responded by asserting a variety of facts and additional legal theories unrelated to the instant motion.  <u>See</u> Answer to Motion for Summary Judgment ("Plaintiffs' Response to Motion").

I.    Count Seven

In count seven of their state court writ, the plaintiffs allege:

> That beginning on or about June 26, 1987 and continuing through 1989, Defendant Homebank, FSB . . . did negligently offer false assurances and misrepresentations to Plaintiffs regarding their operation and potential ownership of the property and business . . . . Defendant Homebank, FSB, and/or

8

> representatives thereof, encouraged Plaintiffs to take,
> and remain in possession of the premises and to
> continue to operate the business . . . . Said false
> assurances and misrepresentations, negligently made
> . . . did cause Plaintiffs damage . . . .

Writ of Summons, New Hampshire Superior Court for Coos County, May 15, 1992 ("Writ"). The court understands this count to allege the state tort of negligent misrepresentation.

Under New Hampshire law, a party has a cause of action for negligent misrepresentation "when the representor fails to use reasonable care in ascertaining the facts." Island Shores Estates Condominium Ass'n v. City of Concord, 136 N.H. 300, 305 (1992). The elements of negligent misrepresentation are "a negligent misrepresentation by [one party] of a material fact and justifiable reliance by [another party]" on that representation. Ingaharro v. Blanchette, 122 N.H. 54, 57, 440 A.2d 445, 447 (1982); see also Hydraform Prods. Corp. v. American Steel & Aluminum Corp., 127 N.H. 187, 200, 498 A.2d 339, 347 (1985).

The court next considers whether the plaintiffs have alleged facts sufficient to support a claim for negligent misrepresentation under New Hampshire law. Count seven of the writ includes general allegations that HomeBank negligently offered false assurances and misrepresentations relative to the property, and the plaintiffs' ability to receive title to the property, such as to entice the plaintiffs to continue their

9

occupancy and operation of the store.  See Writ at ¶ 7.
Likewise, in their response to the instant motion the plaintiffs
assert that they occupied the property "on the understanding that
they could take title to said property without the necessity for
new financing," Plaintiffs' Response to Motion at ¶ 1, and "at
least partly in reliance that the sellers would be able to convey
title to the Store with the consent of the trustee in bankruptcy,
and with . . . Home Bank's agreement to assumption of plaintiffs
of mortgages held by Home Bank . . . ."  Id. at ¶ 2.

These nonspecific allegations, even taken as true and in a
light most favorable to the plaintiffs, cannot sustain a prima
facie case of negligent misrepresentation, i.e., that they
justifiably relied on one or more material facts which had been
negligently misrepresented by HomeBank.  First, although the
plaintiffs state that they invested in and operated the business
with the belief that they would be able to receive title to the
property, they have never identified which facts HomeBank
allegedly misrepresented to induce such reliance.  See Writ at ¶¶
7, 8; Plaintiffs' Response to Motion.

Second, the plaintiffs' responses to interrogatories, supra,
state unambiguously that they were aware that their purchase
"would require the approval of the Bankruptcy Court."
Plaintiffs' Response to Interrogatories, no. 4.  This response,

which the court treats as an admission, forecloses a factual finding that the plaintiffs reasonably relied on any contrary representation by HomeBank, such as a representation that HomeBank could convey, or could require the bankruptcy court to convey, title to the property.

Third, the February 22, 1989, commitment letter, which the plaintiffs signed and later repudiated, includes no representations concerning the ability of the HomeBank or the Foxes to convey title.[6] Nonetheless, the uncontroverted testimony of Ronald Beaudoin, a HomeBank loan officer at the time, indicates that in the weeks following execution of the commitment letter HomeBank and the plaintiffs jointly petitioned the bankruptcy court to permit conveyance of title to the property. Although unsuccessful, this joint effort is further evidence that at the time of the allegedly false representations the plaintiffs were aware that purchase of the property required approval of a third party, namely the bankruptcy court. This conduct also indicates that, to the extent HomeBank may have represented that it would assist the plaintiffs in securing bankruptcy court permission to convey title, such a

---

[6]The court notes that beyond nonspecific, generalized allegations of prior negotiations, the commitment letter is the only evidence before the court to indicate which facts, if any, HomeBank represented to the plaintiffs concerning their occupancy of the property.

11

representation was neither false nor negligently made in that bank did, in fact, undertake such an effort.

The court finds that there is no dispute of material fact that the plaintiffs knew their intended purchase of the property, as well as their ability to secure financing through HomeBank to make such a purchase, was contingent on the bankruptcy court's approval of the petition to allow the Foxes to convey the title to the property. Accordingly, the RTC is entitled to summary judgment on count seven of the writ.

II. Count Eight

In count eight of their state court writ, the plaintiffs allege:

> That Defendant Homebank, FSB did offer Plaintiffs fraudulent assurances, and made intentional misrepresentations to Plaintiffs concerning their operation and potential ownership of the property and business . . . . [and] did make said fraudulent assurances and intentional misrepresentations to protect its secured interest in the property . . . .

Writ at ¶ 8. The court understands this count to allege the state tort of intentional misrepresentation.

The New Hampshire Supreme Court has recognized the tort of intentional misrepresentation, also known as fraud. Allison v. Anderson Acquisition Corp., No. 91-702-JD, slip op. at 15-16 (D.N.H. Sept. 30, 1993); Jay Edwards, Inc. v. Baker, 130 N.H. 41, 46-47, 534 A.2d 706, 709 (1987); Caledonia, Inc. v. Trainor, 123

12

N.H. 116, 124, 459 A.2d 613, 618 (per curiam) (1983); see also Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652, 662 (1st Cir. 1981).

The elements of fraud or deceit are (1) a party misrepresented a material fact to another, knowing it to be false; (2) did so with fraudulent intent that the other act on it; and (3) the other, without knowledge of its falsity, detrimentally relied on the misrepresentation. Allison, slip op. at 15-16; see Proctor v. Bank of New Hampshire, 123 N.H. 395, 399, 464 A.2d 263, 265 (1983). "Under New Hampshire law, a representation is fraudulent if made with knowledge of its falsity or with conscious indifference to its truth, and if the false statement was made for the purpose or with the intention of causing another to act on it." Brochu, 642 F.2d at 662 (citation omitted); see also Manchester Bank v. Connecticut Bank & Trust Co., 497 F. Supp. 1304, 1316 (D.N.H. 1980). Finally, when pleading a claim for fraud under New Hampshire law, plaintiffs must "specify the essential details of the fraud and specifically allege the facts of the defendant's fraudulent actions." Proctor, 123 N.H. at 399, 464 A.2d at 265; accord Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity").

The plaintiffs' allegations, taken as true and in a light most favorable to the plaintiffs, cannot sustain a prima facie case of intentional misrepresentation or fraud. As an initial matter, the failure to identify which fact(s) HomeBank fraudulently represented necessarily prevents the plaintiffs from establishing any one of the three elements of the tort.[7]

---

[7]Likewise, the plaintiffs' response to the instant motion fails to raise a factual dispute on the crucial issue of whether such a false representation was ever made by HomeBank. See Plaintiffs' Response to Motion. Rather, the response alleges for the first time that HomeBank breached various duties owed to the plaintiffs. For example, they argue that following the bankruptcy court's refusal to permit title to pass,

> Home Bank had an obligation to pursue an alternative
> course of action by petitioning for permission to
> foreclose the mortgages held by it on the Store
> property as an alternative method of acquiring title
> and passing it through to the plaintiffs, which said
> action the Home Bank neglected to do although
> acquiescing in the plaintiffs continued occupancy of
> said premises and operation of the Store.

Plaintiffs' Response to Motion at ¶ 3. The plaintiffs further allege that HomeBank was obligated to inform them that foreclosure was alternative means to transfer title, id. at ¶ 4, and to inform them that alternative financing arrangements existed. Id. at ¶ 5.

These assertions do not bar entry of summary judgment in favor of the RTC. Assuming, arguendo, that HomeBank did violate a legally cognizable tort or contract duty, such conduct would bear no relationship to the distinct tort claims of negligent and intentional misrepresentation alleged in counts seven and eight. See Hydraform Prods. Corp., 127 N.H. at 200, 498 A.2d at 347 (citing Munson v. Raudonis, 118 N.H. 474, 477, 387 A.2d 1174, 1176 (1978)) ("mere proof of breach of promise, whether or not the promise is a contractual term, will not support an action for misrepresentation"). In addition, the court notes that the proper method to assert additional legal theories against

14

Second, the plaintiffs could not proceed to trial with their fraud claim even if they had alleged conduct beyond their nonspecific assertions that HomeBank guaranteed conveyance of title. Specifically, the plaintiffs could not establish the third element of the tort, i.e., that they relied upon the representation unaware of its falsity, given the admission, supra, that they knew conveyance and financing was contingent on the bankruptcy court's approval of their petition. See Plaintiffs' Responses to Interrogatories. The undisputed fact that the parties jointly petitioned the bankruptcy court further manifests an awareness of the necessity to receive court approval prior to purchase.

The court finds that the RTC is entitled to summary judgment on count eight of the writ because the plaintiffs have failed to make an initial showing of which facts HomeBank intentionally misrepresented. In the alternative, even if the plaintiffs had asserted that HomeBank represented that title could pass, the claim would fail because there is no dispute of material fact that the plaintiffs knew that their intended purchase, as well as their ability to secure financing through HomeBank, was contingent on the bankruptcy court's approval of the petition to

existing defendants would be the filing of a motion to amend under Rule 15.

15

allow the Foxes to convey title.  Accordingly, the RTC is entitled to summary judgment on count eight of the writ.

<u>Conclusion</u>

For the foregoing reasons, the court grants the RTC's motion for summary judgment (document no. 44), leaving DuPont as the sole remaining defendant to this action.  The RTC is no longer a party to this action and the remaining disputes involve questions of state law over which the court need not exercise jurisdiction. Accordingly, the court remands the case to the New Hampshire state court.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

August 30, 1995

cc:  Edward J. Reichert, Esquire
     Wallace J. Anctill, Esquire
     Timothy E. Britain, Esquire
     Louise H. Mara, Esquire