George LaBARRE and Cherline LaBarre,
Plaintiffs, Appellees,

v.

Merrill J. SHEPARD and Thomas M.
Parks, Defendants, Appellants.

No. 95–2095.

United States Court of Appeals,
First Circuit.

Heard March 4, 1996.

Decided May 28, 1996.

Timothy G. Kerrigan with whom Hamblett
& Kerrigan, P.A., was on brief, Nashua, NH,
for appellants.

David V. Shablin with whom Raymond J.
Reed and Reed & Reed, were on brief,
Worcester, MA, for appellees.

Before SELYA, Circuit Judge,
CAMPBELL, Senior Circuit Judge, and
STAHL, Circuit Judge.

STAHL, Circuit Judge.

Merrill J. Shepard and Thomas M. Parks
appeal from the judgment against them in
favor of George LaBarre and Cherline La-
Barre. A jury found that Shepard and
Parks: (1) improperly and unfairly foreclosed

the mortgage they held on the LaBarres' residence; (2) breached an agreement to avert the foreclosure; committed (3) misrepresentation and (4) fraud; and (5) engaged in an unfair trade practice in violation of New Hampshire's Consumer Protection Act. On appeal, Shepard and Parks raise two narrow issues: first, that admission of evidence of an alleged oral agreement, whereby the LaBarres would deliver a deed in lieu of foreclosure, violated the Statute of Frauds; and, second, that the damages awarded were improperly duplicative. Disagreeing with the appellants' first contention, but agreeing as to the second, we affirm in part, reverse in part, and remand for correction of the damages award.

## I.

### Background

On October 20, 1989, the LaBarres purchased a newly erected house and surrounding land in Weare, New Hampshire, from Shepard and Parks, the builders.[1] The purchase price was $229,000; the LaBarres paid $11,450 cash and gave Shepard and Parks a promissory note in the amount of $217,550, secured by a first mortgage on the premises. No payments of principal or interest were due on the note until either the LaBarres sold certain other real estate or the passage of two years from the date of the note's execution.[2]

In October 1990, the LaBarres sued Shepard and Parks in New Hampshire state court for defective construction, seeking recision and money damages. Shepard and Parks counterclaimed for principal and interest allegedly due on the mortgage note. After a bench trial, the court denied recision, but found defective construction that would cost $38,000 to repair. Accordingly, on June 7, 1993, the court entered judgment,[3] deducting the cost of repairs from the mortgage balance.[4]

In the summer of 1993, Shepard and Parks initiated foreclosure proceedings against the LaBarres for the balance then due on the mortgage note.[5] A foreclosure sale was

---

1. This is a unusual case. The record reveals a number of anomalies in the underlying real estate transaction, the foreclosure process, and the litigation in the state and federal trial courts. Because none of these irregularities is material to the narrow issues on appeal, we merely point them out in footnotes to help the reader understand the odd posture of this case.

2. The promissory note, while providing for a deferral of payments for up to two years, did not provide for any installment payments thereafter nor for a balloon payment. The parties, however, do not raise any issues concerning the note and agree on the amount due thereunder.

3. This judgment is impossible to decipher. The state trial judge found that the LaBarres had "sustained their burden of proof on their claim of damages" and "assessed" those damages at $38,000. The judge then stated that "[d]efendants' counterclaim is DENIED without prejudice to assert a separate action, if necessary." In spite of denying the counterclaim for the mortgage balance due, the judge did not make an award of money damages, but rather deducted the $38,000 damage award from the balance due on the note. The judge went on to present "the correct methodology for recalculation of the promissory note," arriving at a "[t]otal due under terms of promissory note" of $239,729. The decree ended: "Judgment entered in accordance with the foregoing."

Inexplicably, both parties and the magistrate judge consider this to be a judgment for Shepard and Parks for $239,729, when the state court judge expressly *denied* their counterclaim. We ignore this problem, though, because the magistrate judge ultimately used the state court "judgment" to measure the proper award on the mortgage deficiency counterclaim brought by Shepard and Parks; hence, there was no award on the state judgment itself. Neither party raises any question about the state court judgment on appeal. Given this posture, we too shall refer to the state court mortgage balance calculation as a "judgment," though it seems at best to be a finding of fact.

4. The balance was recalculated as follows:

| | |
|---|---|
| Original Principal balance on mortgage note | $217,500 |
| less: Cost to repair defects | 38,000 |
| Net principal due on mortgage note | $179,500 |
| plus: Interest due on net principal as of 5/20/93 | 59,609 |
| TOTAL DUE AS OF 5/20/93 | $239,109 |
| Interest Per Diem: $34.32 | |
| TOTAL DUE AS OF JUDGMENT DATE 6/7/93 | $239,729 |

5. The record does not reveal whether Shepard and Parks initiated the foreclosure proceedings before or after the entry of the state court judgment recalculating the mortgage balance. Thus, it is unclear whether the foreclosure was an attempt to collect on the judgment or the note;

scheduled for September 22, 1993. At some point prior to the foreclosure sale, Shepard and Parks obtained a "drive-by" appraisal that indicated a fair market value of $150,000, and the LaBarres were informed of that appraisal.

According to the LaBarres, their lawyer orally agreed with the lawyer for Shepard and Parks that the LaBarres would deliver a deed in lieu of foreclosure, and in return, Shepard and Parks would credit the full $150,000 appraised value of the property in determining the deficiency owed under the state court judgment. In consideration for the agreement, the LaBarres allegedly offered Shepard and Parks access to their home for a more thorough appraisal. Shepard and Parks assert that no such agreement was made. There is no written agreement, nor any other writing or notes concerning the alleged oral agreement between the lawyers.

The LaBarres claim to have been seeking financing to facilitate a bid on the property at the foreclosure sale, but say that they abandoned those efforts when the agreement to deliver the deed in lieu of foreclosure was reached. One day before the scheduled foreclosure sale, however, the LaBarres received a faxed appraisal from Shepard and Parks indicating that the property was worth only $125,000, and that they would give the LaBarres credit for 70% of that amount, i.e., $87,500 against the amount due.[6] The LaBarres apparently rejected that offer, and the foreclosure sale went ahead as scheduled. The only bidders were Shepard and Parks, who, upon the advice of counsel, jointly purchased the property for $87,500.

Sometime later, the LaBarres paid Shepard and Parks $17,500 to obtain the release of an attachment on the LaBarres' property in Massachusetts; this was the only payment made by the LaBarres other than their initial down payment.

## II.

### Proceedings Below

The LaBarres brought this diversity action in federal district court in Massachusetts, seeking redress for the refusal of Shepard and Parks to honor their promise to accept, on terms acceptable to the LaBarres, a deed in lieu of foreclosure. The LaBarres' complaint, as amended, was framed in five counts: (I) unfair and improper foreclosure, (II) breach of contract, (III) intentional misrepresentation, (IV) fraud, and (V) unfair and deceptive trade practice under New Hampshire's Consumer Protection Act, N.H.Rev. Stat.Ann. ch. 358–A ("RSA 358–A"). Shepard and Parks brought counterclaims for (I) the deficiency on the foreclosed mortgage and (II) the judgment debt on the earlier New Hampshire state court judgment.

The parties consented to a jury trial with the magistrate judge presiding. The magistrate judge determined that the case was governed by New Hampshire law. Prior to trial, Shepard and Parks moved *in limine* to exclude all evidence of the alleged oral agreement, which they claimed was barred by New Hampshire's Statute of Frauds, N.H.Rev.Stat.Ann. § 506:1 ("RSA 506:1") (precluding actions to enforce oral contracts for the conveyance of land). The magistrate judge ruled that the statute did not bar the LaBarres' breach of contract claim. After the trial, the magistrate judge explained that, under New Hampshire law, the Statute of Frauds did not bar a cause of action for breach of an oral settlement agreement between attorneys.

After a three-day trial in March of 1995, the jury found for the LaBarres on all five counts. Through special interrogatories, the jury specifically found that the fair market value of the property at the time of foreclosure was $170,000, and that Shepard and Parks breached an agreement to accept a deed in return for credit of $150,000 toward the LaBarre's mortgage obligation. The

---

we will treat it as a mortgage foreclosure on the note.

**6.** It is unclear from the record, and neither party has explained, whether the credit was to be applied to the outstanding balance on the mortgage

note or to the state court judgment. Given the cryptic nature of that judgment, *see supra* note 3, this lack of precision is not surprising. For simplicity, we will speak in terms of credit toward the balance on the mortgage note.

jury also found that Shepard and Parks committed an unfair trade practice in violation of the Consumer Protection Act, RSA 358–A, and that the LaBarres suffered actual damages of $82,500 as a result. Although the jury was not asked how it arrived at that actual damages figure, $82,500 is the difference between the property's fair market value of $170,000 and the $87,500 that Shepard and Parks bid at the foreclosure sale. The jury also answered that the Consumer Protection Act damages should be trebled.[7]

The magistrate judge directed a verdict for Shepard and Parks on their counterclaims, and then ruled, in essence, that the mortgage balance due, as calculated in the state court judgment, was the proper measure for a single, non-duplicative recovery, satisfying both counterclaims.[8]

Recognizing that the claims for breach of contract, misrepresentation, and fraud were, in essence, alternative theories of improper foreclosure, the magistrate judge treated Counts II, III, and IV as subsumed in Count I, the improper foreclosure count. Rather than awarding damages outright on Count I, the magistrate judge implemented the jury's findings on Counts I through IV by crediting the LaBarres with the full fair market value of the property, $170,000, in calculating the amount due to Shepard and Parks on their counterclaims.

The magistrate judge then awarded treble damages of $247,500 to the LaBarres on Count V, the Consumer Protection Act count, in accordance with the jury's special interrogatory answers. The judge ruled that although Count V was "based on the same factual allegations as were alleged in each of the other four counts of the LaBarres' Complaint, they are entitled to an independent recovery under Count V for violation of the New Hampshire Consumer Protection statute." The magistrate judge also awarded costs and reasonable attorney fees to the LaBarres, as provided in the Consumer Protection Act.

Shepard and Parks moved for a new trial under Federal Rule of Civil Procedure 59(a), to no avail. On appeal, Shepard and Parks raise two of the issues they asserted in their Rule 59(a) motion. First, they argue that evidence of the alleged oral agreement should have been excluded from trial under the Statute of Frauds. Second, they maintain that the award of damages under the Consumer Protection Act must be reduced by $82,500. They assert that the award of full market value credit against the balance owed on the mortgage note, in addition to trebled Consumer Protection Act damages, constituted an improperly duplicative recovery because all the counts were based on the same factual allegations. In effect, they point out, the LaBarres received a quadruple recovery, but were entitled only to the damages under the largest single count, i.e., the trebled Consumer Protection Act damages.

## III.

### Discussion

#### 1. The Statute of Frauds

The same factual allegation underlies all five counts: Shepard and Parks orally promised to accept a deed in lieu of foreclosure on terms acceptable to the LaBarres, but then reneged on that agreement the day before the foreclosure sale. Shepard and Parks assert that New Hampshire's Statute of

---

**7.** In his memorandum of decision dated September 5, 1995, the magistrate judge explained that, although he should have decided whether to double or treble the Consumer Protection Act damages rather than the jury, Shepard and Parks had waived the issue. Shepard and Parks raised no objection at trial, and they now concede that the error has not been preserved for appeal. We express no opinion whether the multiplication of damages under New Hampshire's Consumer Protection Act is for the jury or the judge.

**8.** The special interrogatory form indicated that Shepard and Parks were entitled to recover on the state court judgment, specifying that amount as $239,109; the actual calculation in that judgment was $239,729. *See supra* note 4. The difference between the two figures is the interest applied for the period from May 20, 1993 (apparently the date of a stipulated interest calculation) through June 7, 1993 (the date of the state court judgment). Neither figure includes interest from mid–1993 through the March 1995 judgment in this case.

The parties, however, do not assert any error in the calculation of the counterclaim recovery by Shepard and Parks.

Frauds barred all testimony and evidence of the alleged oral agreement. The statute, RSA 506:1, provides: "No action shall be maintained upon a contract for the sale of land unless the agreement upon which it is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person authorized by him in writing."

Because the magistrate judge awarded damages only on Count I (improper foreclosure) and Count V (Consumer Protection Act), Shepard and Parks recognize that the judgment was not based on enforcement of the contract. They argue, rather, that the "entire trial proceeding was tainted" by the introduction of evidence of the oral agreement, requiring reversal.

The parties agree that the Statute of Frauds is applicable on its face to the oral agreement in question here. They expend much energy, however, disagreeing about whether one or more exceptions to the statute apply in these factual circumstances. In doing so, the parties miss the real issue and misunderstand the operation of the Statutes of Frauds.

■ There is no need here to decide the existence, scope, or applicability of the asserted common-law exceptions to the Statute of Frauds (the so-called "oral settlement agreement between attorneys" exception and the part-performance exception). We hold instead that, under New Hampshire law, the Statute of Frauds is only a bar to the enforcement of certain oral contracts; it is not a rule of evidence. Evidence of the oral agreement in this case was relevant to the counts alleging improper foreclosure, misrepresentation, fraud, and unfair trade practice in violation of the Consumer Protection Act. Shepard and Parks raise no claim that the Federal Rules of Evidence barred its admission. Thus, we find no reversible error.

We find clear guidance in New Hampshire caselaw. The New Hampshire Supreme Court held in *Munson v. Raudonis*, 118 N.H. 474, 387 A.2d 1174, 1176 (1978), that the Statute of Frauds, RSA 506:1, did not bar an action for deceit even though the oral promise that was breached could not be enforced because of the lack of a writing. In reaching

that holding, the *Munson* court expressly rejected the argument pressed here by Shepard and Parks, i.e., that evidence of the oral agreement should have been excluded because the four non-contract counts were merely a back-door attempt to circumvent the Statute of Frauds. The court in *Munson* reasoned as follows: "Barring an action in deceit because of the Statute of Frauds, however, would not further the policy of the statute. Quite the contrary, it would foster an injustice." *Id.* In our view, *Munson* embodies New Hampshire law on the question, and the argument raised by Shepard and Parks must fail. *See also Morgan v. Morgan*, 94 N.H. 116, 47 A.2d 569, 571 (1946) (Statute of Frauds did not bar action for misrepresentation even if agreement was unenforceable as a contract).

The Restatement (Second) of Contracts, a source often relied upon by the New Hampshire Supreme Court, provides additional support for this result. *See, e.g., Tsiatsios v. Tsiatsios*, 140 N.H. 173, 663 A.2d 1335, 1339 (1995) (following the Restatement); *Patch v. Arsenault*, 139 N.H. 313, 653 A.2d 1079, 1082 (1995) (same); *Simpson v. Calivas*, 139 N.H. 1, 650 A.2d 318, 327 (1994) (same). Section 143 of the Restatement provides that "[t]he Statute of Frauds does not make an unenforceable contract inadmissible in evidence for any purpose other than its enforcement in violation of the statute." *Restatement (Second) of Contracts* § 143 (1981). The Comment to Section 143 explains that "the Statute, despite occasional statements to the contrary, does not lay down a rule of evidence, and an unenforceable contract may be proved for any legitimate purpose." *Id.* § 143 cmt. a.

■ It does not matter that the magistrate judge's reason for admitting evidence of the alleged oral agreement was his conclusion that a purported "lawyer's settlement agreement" exception (or alternatively, the part-performance exception) put the agreement outside the Statute of Frauds. While we are skeptical whether that conclusion was correct, we can affirm the admission of evidence on any proper basis, even if the trial judge relied on a different ground. *See*

*United States v. Nivica,* 887 F.2d 1110, 1127 (1st Cir.1989) (no reversal where trial court admits evidence on an incorrect basis, if properly admissible for same purpose under different rule of evidence), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990); *cf. Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 204 (1st Cir.1994) (appellate court free to affirm the district court's judgment on any independently sufficient ground manifest in the record).

Because the evidence of the alleged oral agreement was admissible for purposes other than enforcing that agreement, i.e., to prove the four non-contract counts, and because the breach of contract count did not affect the judgment, there is no reversible error in the magistrate judge's ruling on the applicability of the Statute of Frauds.

*2. Duplicative Damages*

The jury found that the fair market value of the LaBarres' property was $170,000 at the time of foreclosure. As damages for Counts I through IV, the magistrate judge gave the LaBarres credit for the full $170,000 as an offset against the judgment for Shepard and Parks on the mortgage balance. This placed the LaBarres in an even better position than if they had delivered a deed in lieu of foreclosure for $150,000 credit, as the parties had allegedly agreed. Shepard and Parks have not appealed the award of the $170,000 credit for Counts I through IV.

Because Shepard and Parks had bid only $87,500 at the foreclosure sale, the $170,000 credit is the equivalent of a damages award of $82,500, placing the LaBarres in the position they would have been in if Shepard and Parks had bid fair market value at the foreclosure. There is no doubt that this award made the LaBarres whole, or better, for the improper foreclosure.

The jury also found that the violation of the Consumer Protection Act by Shepard and Parks caused the LaBarres actual damages of $82,500, which the jury trebled for an award of $247,500. *See* RSA 358–A:10. Because the net effect of the credit toward the mortgage was to award $82,500 above the amount bid by Shepard and Parks, and because the Consumer Protection Act award was for three times $82,500, the LaBarres effectively enjoyed a quadruple recovery. The magistrate judge opined that the Consumer Protection Act provided an independent recovery, and thus there was no improper duplication. Shepard and Parks assert that this was error, and that the Consumer Protection Act award should be reduced by $82,500 to limit the net award to treble damages. We agree.

It is evident from the record, and the LaBarres appear to concede, that the damages under Count I (improper foreclosure) are based on the same factual allegations as the damages under Count V (Consumer Protection Act). The award on Count I (in which all the four common-law counts were subsumed) was based on the $82,500 difference between the fair value and the bid price; the same amount, $82,500, obviously reflecting the same difference between the fair value and the bid, was awarded and trebled (to $247,500) under the RSA 358–A count. Nonetheless, the LaBarres argue that this quadruple award was proper because they are entitled to an "independent recovery" under New Hampshire's Consumer Protection Act.

The LaBarres, however, point to nothing in the statute or in any New Hampshire case that supports their contention that the Consumer Protection Act provides an "independent recovery." We have found no New Hampshire authority directly on point, but we are confident that New Hampshire's Supreme Court would follow its general rule against duplicative recoveries and would find the award in this case erroneous. *See Phillips v. Verax Corp.,* 138 N.H. 240, 637 A.2d 906, 912 (1994) ("[T]he plaintiff is not entitled to multiple recoveries for the same loss merely because he alleged alternative theories of recovery."); *Clancy v. State,* 104 N.H. 314, 185 A.2d 261, 263 (1962) ("Duplication of damages should be avoided."); *Burke v. Burnham,* 97 N.H. 203, 84 A.2d 918, 922 (1951) (recovery of same damages under two causes of action impermissible). We hold that the award in this case was duplicative, and that the LaBarres' recovery may not

exceed the treble damages allowable under the Consumer Protection Act.

The LaBarres argue that a Massachusetts decision affirming a damage award under the Massachusetts Consumer Protection Act, Mass.Gen.L. ch. 93A, supports by analogy the magistrate judge's award in this case. The cited case, *Multi Technology, Inc. v. Mitchell Management Sys., Inc.*, 25 Mass. App.Ct. 333, 518 N.E.2d 854, 857, *review denied*, 402 Mass. 1101, 521 N.E.2d 398 (1988), does not, however, provide any support. The plaintiffs in *Multi Technology* received Consumer Protection Act damages in addition to contract damages because the separate counts entailed factually separate items of damage. *Id.* The plaintiff had agreed to a reduced fee based on the defendant's misrepresentations. Accordingly, the court awarded the agreed amount as contract damages, and also awarded the difference between the plaintiff's standard fee and the agreed-upon reduced fee as Consumer Protection Act damages. *Id.* Here, there are no factually separate items of damage, and the holding in *Multi Technology* is inapplicable.

Contrary to the LaBarres' assertions and their misleading citation of *Multi Technology,* the quadruple recovery in this case is clearly improper under Massachusetts law, as well as New Hampshire law. In *Calimlim v. Foreign Car Ctr., Inc.,* 392 Mass. 228, 467 N.E.2d 443, 448 (1984), the Supreme Judicial Court held that "[w]here injury is incurred because of conduct which comprises the elements of any common law, statutory, or regulatory cause of action, and which is also a violation of the Consumer Protection Act, recovery of cumulative damages under multiple counts may not be allowed." The reasoning and holding in *Calimlim* would unquestionably bar the cumulative recovery in this case, where the factual allegations and the items of actual damages are identical under the common law and Consumer Protection Act counts. *Id.; see also Lexton–Ancira Real Estate Fund, 1972 v. Heller,* 826 P.2d 819, 822–24 (Colo.1992) (en banc) (no double recovery for violation of Colorado Consumer Protection Act and common law misappropriation arising out of same set of facts, and collecting cases with similar holdings in other states).

To recapitulate, we hold that the LaBarres were improperly awarded quadruple damages, when they were entitled to no more than treble damages.

### *IV.*

### *Conclusion*

For the foregoing reasons, the judgment is *affirmed in part, and reversed in part.* The damages awarded to the LaBarres shall be reduced by $82,500, and any interest awarded on the judgment shall be adjusted accordingly. The case is remanded to the magistrate judge for entry of a corrected damages award consistent with this opinion.